## PROVISIONS FOR ABATING THE SMOKE NUISANCE UNDER THE NEW MUNICIPAL CODE.

[Superior Court of Cincinnati, Special Term.]

CITY OF CINCINNATI, BY SOLICITOR, v. WILLIAM F. GASS, SUPERVISING ENGINEER, ET AL.

. Decided, June 8, 1903.

*Smoke Abatement—Department and Officer for Securing—Section 7 of Division 2 and Section 223 of the New Municipal Code.*

1. The creation of a supervising engineer's department and the office of supervising engineer is a proper exercise of the power vested in council by Section 7 of Division 2 of the new Municipal Code.
2. In the absence of specific direction in the ordinance adopted by council, creating a supervising engineer's department and the office of supervising engineer, the appointment of such engineer is imposed by Section 223 of the new Municipal Code upon the mayor.

HOSEA, J.

Heard on demurrer to petition.

Suit is brought on request of a tax-payer alleging the passage of an ordinance on May 4th, 1903, creating a "supervising engineer's department to regulate and compel the consumption of smoke, and to prevent injury and annoyance therefrom," within the corporate limits of Cincinnati. The ordinance provides for a supervising engineer and a stenographer; fixes their terms of office and compensation; defines their authority and duties; declares the emission of smoke under certain conditions to be a nuisance and a misdemeanor; prescribes the punishment therefor; and specifies further duties of the supervising engineer in relation to the prosecution thereof; and also the duties of the mayor in the same connection.

The petition alleges the appointment, by the mayor, of Wiliam F. Gass as such supervising engineer; and claims that the creation of the department, the appointment of the said incumbent, and the proposed expenditure of funds in pursuance of the ordinance, are unauthorized by the laws of Ohio; and alleges that neither

said laws nor the ordinance in question provide by whom such appointment shall be made; and that the ordinance involves a misapplication of the funds of said city; and that any action by said supervising engineer would be an abuse of the corporate power of the city.

Predicated upon these allegations, the court is asked to enjoin said Gass from any action or expenditures, as supervising engineer, under said ordinance; and enjoining the auditor from approving any order for funds, or drawing any warrant upon the city treasurer, by virtue of said ordinance.

The suit involves no question of constitutional power as to any specific law, but questions the legal authority of council to pass the ordinance, and the power of the mayor to appoint under the ordinance as passed.

The power exercised by council in the premises, is derived from the Municipal Code, passed by the General Assembly of Ohio at the extraordinary session of 1902 (96 O. L., 20), "To provide for the organization of cities," etc. Division 2 of this act, under the head of "General Powers" (Section 7), provides as follows:

"All municipal corporations shall have the following general powers, and council may provide by ordinance or resolution for the exercise and enforcement of the same."

Following is a list of powers of a varied character such as are or may properly be delegated to and exercised by municipal corporations, some having relation to restraints upon the conduct of individuals in the interest of general peace and good order; others to protection from nuisances and annoyances; others to regulations of business, transportation, etc.; and still others to health, public improvements and public morals; all, however, falling within the domain of the police powers of a state or municipality as commonly recognized and upheld by courts of law.

Among these general powers thus conferred, is the following:

"(3)　To prevent injury or annoyance from anything dangerous, offensive, or unwholesome; to cause any nuisance to be abated; and to regulate and compel the consumption of smoke, and prevent injury and annoyance from the same; and to regulate and prohibit the use of steam whistles."

It is manifest that the ordinance in question is drawn, primarily, under and by virtue of this grant of power, coupled with the power to provide by ordinance for its enforcement and exercise, which latter is perhaps implied in the former.

The first question for determination, then, is: Whether the creation of a "supervising engineer's department," and of the office of "supervising engineer," is a proper exercise of the power vested in council by the law quoted.

Obviously, the "department" and the "office" thus created, were intended to constitute the agency deemed appropriate by the council for "regulating and compelling the consumption of smoke," etc.; and, if we consider the nature of the various other powers vested in the municipality by the act in question, we see that very many require special agencies for their due exercise and enforcement.

To the great agencies—the police department, fire department, board of health, and B. of P. S.—many of these duties are assigned; but others require the creation of special agencies, such as market master, building inspector, city weigher, water works department, platting commission, superintendent of parks, etc., by whatever name they may be called.

The general principle applicable to the case in hand has been long settled, under the federal Constitution, namely: that within the range of subjects committed to its care, the legislative authority may adopt whatever means it deems proper, which may tend to give effect to the general provisions of the fundamental law. As was said by Chief Justice Marshall in the early case of *Fisher* v. *Blight* (2 Cranch R., 396):

"It would be incorrect, and would produce endless difficulties, if the opinion should be maintained that no law was authorized which was not indispensably necessary to give effect to a specified power. Where various systems might be adopted for that purpose, it might be said, with respect to each, that it was not necessary because the end might be obtained by other means. Congress must possess the choice of means which are in fact conducive to the exercise of a power granted by the Constitution."

This question was further considered in *McCulloch* v. *The State of Maryland* (4 Wheaton R., 316), upon a most elaborate presenta-

tion by some of the ablest advocates in the nation, including Webster, Pickney and Wirt; and ,he decision of Chief Justice Marshall has always been regarded as a masterpiece. Among other things he said:

"We think the sound construction of the Constitution must allow to the national Legislature that discretion with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the duties assigned to it in the manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate—which are plainly adapted to that end—which are not prohibited, but consist with the letter and spirit of the Constitution, are constitutional."

The doctrine thus established by these and a multitude of later cases in federal and state courts, is so manifestly just and so beneficient in its operation, as to command acceptance and application wherever kindred conditions exist. The grants of power in the code are—as in the federal Constitution—by *enumeration* and not by *definition;* and, in the particular grant under consideration, the nature of the requirement, viz.: "To regulate and compel the consumption of smoke and prevent injury and annoyance from the same" is such as may well demand the exclusive time and attention of a skilled expert—not only because.of the magnitude of the evil in large cities like this, but, by reason of the inherent difficulty, in the present state of scientific knowledge, of applying that knowledge consistently with economic conditions, to the accomplishment of the obvious intent of the law. The court must take judicial knowledge of the fact that the problem of smoke prevention—which is the thing contemplated by the law—is one that has for many years taxed the thought and skill of engineers and scientific experimenters throughout the civilized world, with but little progress in a direction ni all respects satisfactory, or that has brought forth methods and appliances applicable to existing conditions. and consistent with cheap manufacturing production upon which so much of our material prosperity depends.

Under such conditions—under a law committing the subject in general terms to the legislative branch of the municipal govern-

¬nent—and with only the question of appropriateness of means se-
lected—open to judicial interference, I can not but hold that the
creation of a department or bureau of the municipal government,
for accumulating information upon this subject, and the creation
of a continuing office with such compensation as may secure au
incumbent possessing the requisite ability to understand and keep
in touch with the progress of the world in this direction, and gather
and digest the results achieved elsewhere for the benefit of the com-
munity he serves, is a reasonable and appropriate means plainly
and well adapted to the end contemplated in the initial grant of
power, and in consonance with the letter and spirit of the code.

The remaining question has relation to the power of the mayor
to appoint, in the absence of a specific direction in the ordinance.

The mayor is the executive head of the municipality, and his
duty, generally, is to see to the proper execution of ordinances.
While, under the code, the executive power is vested in the mayor
and other designated officers (Sec. 128), the mayor still remains
the "official" head, with all power properly appertaining to his
office not specifically allotted to other agencies of the municipal
government. This is practically the effect and meaning of Sections
129, 130, and others, especially Section 225, giving the mayor gen-
eral supervision of all departments and officers provided for in the
code.

In respect of certain specified departments, the code has pro-
vided for the mode of appointment of officers and employes; and in
Section 223, there is a residuary provision as follows:

"All appointments authorized by this act, or by any ordi-
nance, shall be made by the mayor, unless otherwise specifically
provided in this act."

The contention of the plaintiff on the point under consideration,
seems to be based upon a strained and unnecessary construction of
the words "appointments authorized by this act, or by any ordi-
nance."

The ordinance creates the office, fixes its term and compensa-
tion, and defines its duties. It is fundamental law in Ohio that
the Legislature can exercise no appointing power except such as

may be prescribed in the Constitution (Const., Art. II, Sec. 27) although it may direct by law the manner in which officers may be elected or appointed. In the grant of power to municipalities, therefore, the Legislature very properly vested only *legislative* power in the council (Section 116), expressly denying the appointive power (Section 123), excepting in respect of its own officers and employes.

Now, the question of the manner in which an appointment shall be made, and that of making an appointment, are quite distinct—involving the exercise of totally different powers—one legislative, prescribing how the act shall be done; and the other, administrative, which is the doing of it. 29 O. St., 102, *State* v. *Covington.*

In this case, the council, by the ordinance in question, completely performed the legislative act, to-wit: created the office, fixed its term and salary, and prescribed its duties; and properly stopped there because, as the office was of a general character not covered by other jurisdictions provided in the code, (such for example as the Department of Public Service, etc.) for appointing power was necessarily lodged in the mayor, not only by virtue of his office, but by express enactment of the code in the residuary clause, Section 223:

"All appointments authorized by this act, or by any ordinance, shall be made by the mayor," etc.

I hold, therefore, that the ordinance in question, by fair construction, authorized the appointment of a "supervising engineer," and that the appointment of defendant, Gass, was properly made by the mayor by virtue of the duty imposed by code, Section 223.

Upon the whole case, therefore, the demurrer is well taken, and will be sustained; and, as the case is of a nature that presents only questions of law covered by the demurrer, judgment of dismissal may be entered forthwith.

*Charles J. Hunt,* for plaintiff.

*Frank F. Dinsmore,* for defendants.